**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

CRAIG DULWORTH and BRIANNA
DULWORTH,

        Plaintiff,

  v.

EQUIFAX INFORMATION SERVICES LLC
and EXPERIAN INFORMATION
SOLUTIONS INC.,

        Defendant.

Case No. 1:22-cv-00469-JMS-MJD

**EQUIFAX INFORMATION SERVICES, LLC'S AND EXPERIAN INFORMATION
SOLUTIONS, INC'S REPLY BRIEF IN SUPPORT OF THEIR JOINT
<u>MOTION FOR SUMMARY JUDGMENT</u>**

As in *Myers v. Equifax Information Services LLC*, No. 1:20-cv-00392-JMS-DLP (S.D. Ind.), Plaintiffs seek to turn the Fair Credit Reporting Act ("FCRA") on its head and reverse decades of established precedent. The uncontroverted facts in this case show that Ally Financial ("Ally") informed Defendants Equifax Information Services LLC ("Equifax") and Experian Information Solutions, Inc. ("Experian") (collectively "Defendants") that Plaintiffs' auto loan was discharged in bankruptcy rather than reaffirmed. As a result, Defendants reported the information supplied by Ally. And as the Seventh Circuit has made clear, this is exactly how the credit-reporting system is supposed to work. Furnishers like Ally, who "assume[] the risk and bear the loss of unpaid debts," are responsible for determining a consumer's liability for a debt and accurately conveying that information to consumer reporting agencies. *See Denan v. Trans Union LLC*, 959 F.3d 290 (7th Cir. 2020).

Under Plaintiffs' atextual rewriting of the FCRA, however, Defendants are expected to always side in favor of consumers against furnishers in cases where the consumer disagrees with

the creditor's understanding of his or her repayment obligations, or else face liability under the FCRA. Congress could hardly be clearer in rejecting this interpretation: "Nothing in section [1681i] or any other section is intended to require consumer reporting agencies to arbitrate disputes between consumers and credit grantors as to completeness or accuracy of information in the consumer's file." S. Rep. 104-185 at 43 (*available at* https://www.congress.gov/104/crpt/srpt185 /CRPT-104srpt185.pdf).

Plaintiffs' suggestions are particularly inappropriate in the context of reaffirmation agreements. Only the parties to a reaffirmation agreement can know that a reaffirmation agreement has been entered into and has not been rescinded by the consumer. Further, a consumer and creditor (wary of violating the discharge injunction by embarking on a collection action for a discharged debt) may disagree as to whether a reaffirmation agreement is effective. Plaintiffs' "solution" to all of these issues is that any "tiebreaker" must go in favor of the consumer, but that would require consumer reporting agencies to adjudicate disputed legal questions. Additionally, this would permit consumers to rescind reaffirmation agreements filed during bankruptcy proceedings but avoid the negative consequences of doing so simply by sending in dispute letters to credit reporting agencies.[1] The result is not only untenable, but it would permit Plaintiffs, and their counsel, to make a mockery of the credit reporting system.

In *Myers v. Equifax Info. Servs., LLC*, No. 1:20-CV-00392-JMS-DLP, 2022 WL 4292179 (S.D. Ind. Sept. 16, 2022), this Court determined Experian and Equifax did not violate the FCRA

---

[1] Consumers, like Plaintiffs, are not without recourse under the current system. Even though consumer reporting agencies, like Experian and Equifax, are limited in their ability to verify a reaffirmation agreement, the FCRA permits consumers to file suit against the counter party to their reaffirmation agreement, who should know whether the agreement was valid. Indeed, Plaintiffs filed suit against Ally and have since settled those claims. *See* Filing Nos. 1, 133.

because the disputed reporting presented a legal question credit reporting agencies were incapable of resolving. The Court should reach the same result here and grant summary judgment in favor of Defendants.[2]

## I.     PLAINTIFFS' CLAIMS DEPEND UPON A LEGAL INACCURACY ARGUMENT ALREADY BARRED BY PRECEDENT

As articulated in Defendants' opening briefing, Plaintiffs' theory of liability depends on this Court deciding that a disagreement over whether a reaffirmation agreement is valid is a *factual* dispute instead of a *legal* dispute. *See* Filing No. 186 at 16–19. In a departure from precedent, Plaintiffs refer to the distinction between factual and legal disputes as a "phantom distinction," Filing No. 196 at 14, but the distinction is, in fact, well-recognized by various courts including the Seventh Circuit. *See Chuluunbat v. Experian Info. Sols., Inc.*, 4 F.4th 562, 567–68 (7th Cir. 2021) (recognizing distinction between factual and legal inaccuracies); *Denan*, 959 F.3d at 294 (concluding the argument that "there is no line" between factual and legal inaccuracies "does not find support in the FCRA or its implementing regulations").

In an attempt to circumvent this precedent, Plaintiffs first make the creative argument that Defendants routinely make legal conclusions including when Defendants relied on Ally's reporting that Plaintiff's Ally account was discharged in bankruptcy. Filing No. 196 at 14–15. But this

---

[2] Separately, Defendants would like to call the Court's attention to the length of Plaintiffs' Response. Filing No. 196. Even after excluding from the page count the table of contents and table of authorities, Plaintiffs' 45-page Response exceeds the length permitted by the Local Rules by six pages. Accordingly, and since the Court did not authorize any Party to file a brief exceeding the 35-page limit imposed by the Local Rules, the Defendants request the Court exercise its discretion and not consider arguments raised by Plaintiffs after the 39-page mark. *See Evans v. U.S. Dep't of Interior*, 135 F. Supp. 3d 799, 810 (N.D. Ind. 2015) ("A district court is entitled to strictly enforce its local rules regarding summary judgment pleadings, even if enforcement results in a party forfeiting potentially meritorious arguments.") (citing *Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 537 (7th Cir. 2011)); *Schmitt v. United States*, 203 F.R.D. 387, 396 (S.D. Ind. 2001) (striking reply brief in support of summary judgment motion for exceeding the page limit imposed by the Local Rules).

argument is entirely without merit. Defendants received information from Ally that the tradeline was reporting correctly — any further investigation beyond confirming what Ally had already reported would have required Defendants to determine whether the reaffirmation agreement was legally valid. And it is precisely this scenario that has given rise to the distinction between legal and factual inaccuracies. Although factual inaccuracies can be investigated and correct, legal disputes must be adjudicated and, as a result, are beyond the scope of Defendants' abilities. *See DeAndrade v. Trans Union LLC*, 523 F.3d 61, 68 (1st Cir. 2008) (contrasting factual inaccuracies, which can be "uncovered by a reasonable reinvestigation," with legal issues that credit reporting agencies are "neither qualified nor obligated to resolve under the FCRA"). As this Court held only a year ago in *Myers*, Seventh Circuit case law continues to distinguish between factual and legal inaccuracies. *See Myers*, 2022 WL 4292179, at *14–15.

Similarly, Plaintiffs refer to the October 2022 ACDV from Ally, noting that because Ally reported that the account was not past due and had a balance, Equifax should have taken further investigatory steps. Filing No. 196 at 11. Plaintiffs do not explain, however, what further steps Equifax could have taken because no further steps would have placed Equifax in a position to determine whether the 2018 reaffirmation agreement was valid as of September 2021. Plaintiffs next try to avoid the weight of precedent by citing several cases, none of which stand for the proposition that credit reporting agencies are required under the FCRA to adjudicate legal disputes over the validity of a reaffirmation agreement. Take *Losch v. Nationstar Mortgage, LLC*, 995 F.3d 937 (11th Cir. 2021). In that case, and as acknowledged by the Eleventh Circuit, "[Plaintiff] . . . mov[ed] the bankruptcy court to rescind his affirmation [and] . . . the bankruptcy court granted it." *Id.* at 941. In other words, unlike here, *Losch* involved binding and verifiable filings that were placed on the bankruptcy docket. And in *Sessa v. Trans Union, LLC*, 74 F.4th 38

(2d Cir. 2023), the Second Circuit repeatedly confirmed that liability under the FCRA attaches only where "the information in dispute is 'objectively and readily verifiable.'" *Id.* at 269 (quoting *Mader v. Experian Information Solutions, Inc.*, 56 F.4th 264 (2d Cir. 2023)). Plaintiffs also argue that *Chaitoff v. Experian Information Solutions, Inc.*, 79 F.4th 800 (7th Cir. 2023) stands for the proposition that their disputes over the reaffirmation agreement's validity is factual in nature. But, *Chaitoff* has little bearing here. Notably, the Seventh Circuit in *Chaitoff* stated: "Nothing about Chaitoff's alleged inaccuracy required Experian to investigate beyond the face of the documents it was provided." *Id.* at 815. That is not true here, where Plaintiffs have asserted that Defendants should have investigated whether the reaffirmation agreement was valid and overridden information provided by Ally in the process. Moreover, the legal basis of the *Chaitoff* decision related to whether the material omission of factually correct information from a consumer's credit report amounted to a violation of the FCRA. *See id.* at 816–19. Here, Plaintiffs have argued Defendants' should have corrected an inaccuracy. On that basis alone, the cases are clearly distinguishable.

## II. TO THE EXTENT DEFENDANTS VIOLATED THE FCRA, THOSE VIOLATIONS WERE NOT WILLFUL

Plaintiffs argue that Defendants have not sufficiently identified the "reading of the FCRA they adopted" under *Safeco* and are therefore not entitled to judgment as to willful violation of the FCRA. Filing No. 196 at 40. Where the statute is not clear, however, and the conduct has a basis in the law, it cannot be willful; a willful violation requires a threshold showing that defendant violated an FCRA rule that is "clearly established." *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 70 (2007) (citing *Saucier v. Katz*, 533 U.S. 194, 202, (2001)). Likewise, there can be no willful violation when Defendants follow conduct that "could reasonably have found support in the courts." *Id.* at 70, n.20. When there is no clearly established statute regarding a defendant's

conduct, and statutory text and relevant court guidance allow for more than one reasonable interpretation, punitive damages may not be imposed on a defendant who merely adopts one such interpretation. *Id.* Not only does the FCRA not require credit reporting agencies to adjudicate legal disputes, the Seventh Circuit has clearly held that the validity of a reaffirmation agreement is the quintessential legal dispute. *See Denan*, 959 F.3d at 294; *Chuluunbat*, 4 F.4th at 565–68 (holding credit reporting agencies are not required "to make any legal determinations about the facts or legal judgments").

Furthermore, this Court recently evaluated an identical fact pattern in *Myers* and held that a dispute over the validity of a reaffirmation agreement "requires the CRAs to apply law to facts…[which] the CRAs are not required to [do] under the FCRA. *Myers*, 2022 WL 4292179, at *15. Since the law clearly does not require credit reporting agencies to adjudicate legal disputes and Plaintiffs asked Defendants to apply the law to facts by determining the validity of a reaffirmation agreement, Defendants' reading of the FCRA could not have been willful. *See also White v. Experian Info. Sols., Inc.*, No. 8:05-cv-01070, 2008 WL 11518799, at *10 (C.D. Cal. Aug. 19, 2008) (once a furnisher reports that a consumer has discharged a debt in bankruptcy, the information supplied by the furnisher controls); *Coleman v. Experian Info. Sols., Inc.*, No. 1:21-CV-1095-CAP, 2023 WL 2366609, at *15 (N.D. Ga. Feb. 6, 2023).

Plaintiffs' counsel cites only one case, *Ricketson v. Experian Info. Sols., Inc.*, 266 F. Supp. 3d 1083, 1096 (W.D. Mich. 2017), for support of their argument that Experian's mail processing procedures are a willful violation of 1681i. Filing No. 196 at 42–44. But, in *Ricketson*, the Court only rejected Experian's argument that a misapplication of mail policies was not willful on the grounds that Experian did not "show[] how its conduct in this regard violated any of its specific policies or procedures." *Id.* at 1096. Here, the contrary is true. As already articulated, Experian

rejected Plaintiffs' dispute Letters only *after* determining that the dispute letters allegedly authored by Plaintiffs were, in fact, sent by a third party. *See* Filing No. 186 at 28–29. Moreover, Courts have repeatedly held that law firms, like Plaintiffs' counsel, can moonlight as credit repair organizations and that disputes sent by those law firms do not give rise to liability under § 1681i of the FCRA. *See CBE Group v. Lexington Law Firm*, 993 F.3d 346 (5th Cir. 2021) (noting authorities "suggest that Plaintiffs did not have a statutory obligation to investigate the correspondence Lexington Law sent on its clients' behalves and in their names"); *see also Younger v. Experian Info. Sols., Inc.*, 817 F. App'x 862, 870 (11th Cir. 2020) (holding that there can be no willful violation for decision not to process dispute letter believed to come from third party); Fed'l Trd. Comm'n, Forty Years of Experience with the FCRA, 78 (2011) *available at* https://www.ftc.gov/sites/default/files/documents/reports/40-years-experience-fair-credit-reporting-act-ftc-staff-report-summary interpretations/110720fcrareport.pdf ("A CRA need not investigate a dispute about a consumer's file raised by a third party – such as a 'credit repair organization'"); Filing No. 186 at 27–28 (citing other authorities). That line of case law holds especially true here, where Plaintiffs' counsel intentionally hid its role in the dispute process by omitting all references to Stecklein & Rapp in the dispute letters sent on Plaintiffs' behalves.

Plaintiffs also claim that Equifax did not move for summary judgment as to Plaintiffs' claim for willful violation of Section 1681i of the FCRA, which requires CRAs to conduct reasonable reinvestigations of consumer disputes. 15 U.S.C. § 1681i. Not only, however, did Equifax move for judgment as to Plaintiffs' claim that it willfully violated the FCRA in its statement of claims, but Defendants' motion includes legal authority on willfulness under the FCRA and an entire section dedicated to Plaintiffs' failure to establish that Equifax violated Section 1681i of the FCRA. *See* Filing No. 186 at 15, 25–26, 29–33. To support their argument,

Plaintiffs reference *Kreg Therapeutics v. VitalGo*, which provides that the district court did not err by not granting summary judgment on damages because VitalGo failed to raise it. *See Kreg Therapeutics, Inc. v. VitalGo, Inc.*, 919 F.3d 405, 416 (7th Cir. 2019) (citing *Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 829 (7th Cir. 2015) (citing *Williams v. City of Chicago*, 733 F.3d 749, 755 (7th Cir. 2013)) ("[D]istrict courts may not grant summary judgment on grounds not argued by the moving party, at least not without giving notice so that the non-moving party has the full opportunity to present relevant evidence and argument."). Equifax, however, clearly indicated that it moved for judgment on Plaintiffs' claim for a willful violation of Section 1681i of the FCRA and discussed why its reinvestigations of Plaintiffs' disputes were reasonable and in compliance with the FCRA. *See* Filing No. 186 at 25–26.

As Plaintiffs note in their Response, courts have held that the use of the ACDV process is sufficient when a plaintiff cannot show what a more robust reinvestigation would result in. *See* Filing No. 196 at 30 (citing *Benson v. Trans Union LLC*, 387 F. Supp. 2d 834, 843 (N.D. Ill. 2005) and *Perry v. Experian Info. Solutions, Inc.*, No. 05-1578, 2005 WL 2861078, at *5 (N.D. Ill. Oct. 28, 2005)). Defendants agree. As discussed in Defendants' Brief in Support of Defendants' Motion for Summary Judgment, "no amount of resources could empower [a CRA] to assume the role of a tribunal" and therefore, no amount of reinvestigation by Equifax would have allowed it to determine whether the reaffirmation agreement was legally valid or not because Equifax is not equipped to determine the validity of a debt and neither is it required to do so under the FCRA. Filing No. 186 at 25; *Denan*, 959 F.3d at 294; *Humphrey v. Trans Union LLC*, 759 F. App'x 484 (7th Cir. 2019). Additionally, while Plaintiffs claim that Equifax did nothing more than "parroting," it is clear that Equifax thoroughly reviewed Plaintiffs' disputes because, as testified during its 30(b)(6) deposition, Plaintiffs informed Equifax in September 2021 that they entered

into a reaffirmation agreement with Ally in 2018; neither the dispute documents nor the bankruptcy docket would have provided Equifax with current account information, but an ACDV to Ally, the furnisher of the account information, would. *See* Filing No. No. 183-1 at 30 (Pam Smith Dep. 82:2–13). Plaintiffs also claim that it would have cost Equifax nothing to simply delete the Ally account, but in their disputes, Plaintiffs asked Equifax to update the Ally account to report a payment history to help build their credit; Equifax clearly took its duties under the FCRA seriously by taking an extra step and transmitting an ACDV to Ally to obtain the most updated account history and information; any claim that Equifax recklessly disregarded the FCRA and willfully violated Section 1681i fails as a matter of law. *See* Filing Nos. 181-10, 181-11, 181-12.

Plaintiffs next attempt to distinguish *Myers* on the grounds that the plaintiff in *Myers* did not submit a dispute to the credit reporting agencies and that *Myers* placed Defendants on notice that Ally is not a reliable furnisher. On the contrary, this Court's Opinion in *Myers* is pertinent because even though Mr. Myers did not submit a dispute to the credit reporting agencies, the Court held that the validity of a reaffirmation agreement is a legal question, which the credit reporting agencies are not required to resolve. *See Myers*, 2022 WL 4292179, at *15. Additionally, Plaintiffs imply that because Ally has been involved in lawsuits, including *Myers*, Defendants should have known that it is an unreliable furnisher. Plaintiffs have not, however, provided any authority or evidence to show that Ally is an unreliable furnisher, while Defendants have demonstrated that they were entitled to rely on information provided by Ally in their Motion. *See* Filing No. 186 at 24.

If Experian had been under a duty to reinvestigate the disputes sent on Plaintiffs' behalves (to be clear, it was not) and had sent out ACDVs to Ally, Experian still would have reported Plaintiffs' Ally tradeline as discharged in bankruptcy. In fact, even after Experian was named a

Defendant in this lawsuit, Ally *continued* to inform Experian that Plaintiffs' tradeline was discharged in bankruptcy. *See* Filing No. 183-3 ¶ 20. Since it would have been impossible to further investigate Plaintiffs' disputes without determining the legal validity of the reaffirmation agreement, Plaintiffs cannot show that Experian's failure to further investigate was a willful violation of the FCRA. Moreover, Plaintiffs cannot show that a failure to further investigate caused Plaintiffs' damages since, again, the foundation of Plaintiffs' legal theory is that credit reporting agencies should resolve legal disputes between consumers and their creditors — a theory that has been rejected by this Court.

## III.   PLAINTIFFS CANNOT ESTABLISH ACTUAL DAMAGES

There is no genuine issue of material fact as to whether Plaintiffs suffered any actual damages caused by Equifax or Experian's reporting of the Ally account, because the record shows that they did not. In their Response, Plaintiffs do not dispute that actual damages are necessary to pursue a claim under the FCRA. Filing No. 196 at 23; *see also Ruffin-Thompkins,* 422 F.3d 603, 608 (7th Cir. 2005). Nor do Plaintiffs dispute that Defendants' reporting of the Ally account did not cause them any credit harm. Filing No. 196 at 23–25. Plaintiffs only assert that they testified in their depositions to suffering from emotional distress. *Id.* Any testimony regarding emotional distress, however, is attributable to Plaintiffs' bankruptcy proceedings and actions by Ally. Further, such self-serving testimony is entirely insufficient to establish actual damages under the caselaw of this Circuit. Plaintiffs have therefore not established any damages caused by Defendants' reporting of the Ally account.

In their Response, Plaintiffs allege that Plaintiff Brianna Dulworth testified that she suffers "high blood pressure and anxiety," "sadness and depression," and "overwhelming stress" in her life. *See* Filing No. 196 at 23–25. Plaintiff Brianna Dulworth's emotional distress testimony,

however, relates to their filing bankruptcy and its effect on the Plaintiffs' lives, rather than Defendants' reporting of the Ally account. Filing No. 194-4 (Ex. D – Brianna Depo.) at 241:4–7, 242:2–5, 242:16–23 (stating that she has "spoken to a medical doctor in regards to…overwhelming stress in [her] life, which includes…[her housing situation]," that "it did up end being a lot, moving in with [their] son," and that "the depression and all that has started since [they] moved into [there].").

Plaintiffs also allege that Plaintiff Craig Dulworth suffered distress because no one would help him correct the reporting. Filing No. 196 at 24. This testimony, however, was related to Plaintiffs attempting to rebuild their credit after bankruptcy by repeatedly requesting Ally to revise its reporting. Filing Nos. 194-5 (Ex. E – May 9 Craig Depo.) at 136:4–19; 181-1 at 121:20, 191:22–25. Accordingly, this testimony also fails to link Defendants' actions to Plaintiffs' emotional damages.

Crucially, none of the arguments made by Plaintiffs come close to meeting the stringent standards imposed by the Seventh Circuit for establishing emotional damages. *See Bagby v. Experian Info. Sols., Inc.*, 162 Fed. Appx. 600, 605 (7th Cir. 2006) (rejecting "self-serving and conclusory statements about [ ] emotional distress" on the grounds that such statements fail to satisfy the Seventh Circuit's 'high threshold for proof of damages for emotional distress'" (quoting *Ruffin–Thompkins*, 422 F.3d at 605)). Plaintiffs attempt to circumvent this Seventh Circuit law by citing almost exclusively out-of-Circuit caselaw on emotional distress damages. *See* Filing No. 196 at 23–25. However, Seventh Circuit caselaw is clear and binding on emotional distress damages: courts uphold a "strict standard for a finding of emotional damage because they are so easy to manufacture." *Sarver v. Experian Info. Sols.*, 390 F.3d 969, 971 (7th Cir. 2004) (internal citations omitted). Plaintiffs' self-serving and conclusory testimony does not meet Seventh

11

Circuit's high standard for surviving summary judgment and Plaintiffs' FCRA claims against Defendants fail as a matter of law.

## <u>CONCLUSION</u>

For the foregoing reasons, Equifax and Experian respectfully request that this Court grant Defendants' Motion for Summary Judgment and dismiss all of Plaintiffs' claims with prejudice.

Respectfully submitted,

Dated: December 1, 2023

/s/ Alexandra Robinson French
Alexandra Robinson French

/s/ David J. Sandefer
David J. Sandefer (admitted *pro hac vice*)
dsandefer@jonesday.com
JONES DAY
110 N. Wacker Drive, Suite 4800
Chicago, IL 60606
Telephone: (312) 269-1544

Alexandra Robinson French
alexandra.french@btlaw.com
BARNES & THORNBURG LLP
11 South Meridian Street
Indianapolis, IN 46204
Telephone: (317) 231-7248
Facsimile: (317) 231-7433

*Counsel for Defendant*
*Experian Information Solutions, Inc.*

/s/ Samin Hessami
Samin Hessami (admitted *Pro hac vice*)
SEYFARTH SHAW LLP
700 Milam Street, Suite #1400
Houston, TX  77002-2812
Telephone: (713) 225-2300
Facsimile: (713) 225-2340
shessami@seyfarth.com

Adam T. Hill
ahill@seyfarth.com
SEYFARTH SHAW LLP
233 South Wacker Drive
Suite 8000
Chicago, Illinois  60606-6448
Tel:  (312) 460-5000
Fax:  (312) 460-7000

*Counsel for Defendant*
*Equifax Information Services LLC*